UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| RECHELLE NICHOLS, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:19-cv-00273-JAR |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Rechelle Nichols's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*

**I. Background**

On August 4, 2015, Nichols protectively filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, alleging disability beginning June 30, 2015, due to Graves' disease, blood clots in her left lung, hypertension, sleep disorder, stress in her right neck and shoulder, endometriosis, ovarian cysts, arthritis in her lower back, poor blood circulation in her leg, and pain in the hands. (Tr. 32.) Nichols's application was denied on May 3, 2016. (Tr. 15.) She requested and was granted a hearing before an administrative law judge ("ALJ"), which took place on January 25, 2018. (*Id.*) Nichols was represented by attorney Mike S. Wolter. (*Id.*)

At the hearing, the ALJ heard evidence from both Nichols and an impartial vocational expert. (*Id.*) The vocational expert testified that a person with Nichols's past work history would have a number of skills that would transfer to other available jobs. Among other things, Nichols testified that she had to elevate her feet regularly throughout the day.

After considering that testimony and the record evidence, the ALJ issued a written decision denying Nichols's application on March 30, 2018. (Tr. at 15-25.) On August 28, 2018, the Appeals Council of the Social Security Administration denied Nichols's request for review. (Tr. at 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See Sims v. Apfel*, 560 U.S. 103, 107 (2000).

Nichols filed this appeal on October 25, 2018. (Doc. 1.) The Commissioner filed an Answer. (Doc. 11.) Thereafter, Nichols filed a Brief in Support of her Complaint (Doc. 13), the Commissioner filed a Brief in Support of the Answer (Doc. 18), and Nichols filed a Reply (Doc. 19).

## II. Facts

The Court adopts the facts as stated in the certified agency record (*see* Doc. 12), and as supplemented by statements of fact attached to the parties' briefs. (Docs. 13-1, 18-1, 18-2, 19-1.) The Court's review of the record shows that the adopted facts are accurate and complete. Specific facts will be discussed as part of the analysis.

## III. Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Brantley v. Colvin*, 2013 WL 4007441, at *2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such

2

severity that [the claimant] is not only unable to do his previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20

C.F.R. § 404.1545(a)(1)).  At step four, the ALJ determines whether the claimant can return to her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011).  If the claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step.  *Id.*

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy.  20 C.F.R. §§ 416.920(a)(4)(v).  If the claimant cannot make an adjustment to other work, then she will be found to be disabled.  20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).  Through step four, the burden remains with the claimant to prove that she is disabled.  *Brantley*, 2013 WL 4007441, at *3 (citation omitted).  At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy.  *Id.*  "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole.  *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009).  In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision.  *Andrews v. Colvin*, 791 F.3d 978, 983 (8th Cir. 2015); *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently.  *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. Decision of the ALJ

The ALJ determined that Leonard suffered from the severe impairments of osteoarthritis of both knees and the right hand, obesity, and pes planus (commonly known as flatfeet), *see* Mayo Clinic, *Flatfeet*, https://www.mayoclinic.org/diseases-conditions/flatfeet/symptoms-causes/syc-20372604 (last visited Mar. 24, 2020), as well as three other non-severe conditions. (Tr. at 17.) The ALJ determined that evidence supported a mental impairment of anxiety that was no more than a "minimal limitation." (*Id.*)

The ALJ found that Nichols had a residual functional capacity ("RFC") to perform sedentary work, except that she had to sit for seven hours and walk for one hour in an eight-hour day, could never climb ropes, ladders, or scaffolds, could never kneel or crawl, could only occasionally climb ramps or stairs, stoop, or crouch, must avoid extremes in temperatures and concentrated vibration, and must limit handling and fingering with the right hand only "frequent[ly]." (*Id.* at 18.) The ALJ referenced Nichols's past work as a receptionist, noting that the vocational expert had testified that the work was "semi-skilled with a specific vocational

5

preparation (SVP) code of 4 and required the following skills: operation of machines, record keeping and being able to deal with the public." (Tr. at 24.) The ALJ determined that Nichols could not return to her past work, but the vocational expert testified that her past work skills are transferrable to other occupations with jobs existing in significant numbers in the national economy." (*Id.*) The ALJ additionally found that Nichols's previous work is so similar to other available jobs that Nichols "would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." (Tr. at 24-25.) Based on her review of the medical record and relying on the vocational expert's testimony, the ALJ concluded that Nichols had not been under a disability from June 30, 2015—the alleged onset date—through the date of her decision, March 30, 2018. (*Id.*)

## V. Discussion

### a. **Nichols argues that the ALJ erred when she relied on the vocational expert's testimony that the skills acquired in Nichols's past work transferred "with very little, if any, vocational adjustment."**

Nichols first argues that there was not substantial evidence to support the vocational expert's testimony that the skills Nichols acquired from her past relevant work were transferable with "very little, if any, vocational adjustment." (Doc. 13 at 1). For claimants like Nichols (over fifty-five; high school diploma; past semi-skilled work experience; limited to sedentary work) the ALJ must find that her past skills are transferrable with "little, if any, vocational adjustment required in terms of tools, work process, work settings, and the industry." 20 C.F.R. Part 404, Subpt. P, Appendix 2, § 201.00(f); 20 C.F.R § 404.1568(d)(4). Nichols argues that the ALJ asked the vocational expert if Nichols's skills would transfer to jobs that meet Nichols's RFC but not whether those skills would transfer with "very little, if any, vocational adjustment." (Doc. 13. at 6 (quoting Tr. at 84-88). Because the ALJ never made an independent finding of minimal

6

adjustment, Nichols argues, this requirement was not supported by substantial evidence. (*Id.* at 6-7.)

Defendant responds that Nichols demands a higher level of specificity than is required by statute. (Doc. 18 at 5.) Defendant asserts that both the ALJ and vocational expert understood that, when the ALJ asked the vocational expert "if there are any transferrable skills from the claimant's past work that fit into a sedentary RFC," (Tr. at 84), "transferrable" meant "transferrable with little or no vocational adjustment, given Nichols's age, education, and work history." Noting that the Eighth Circuit has long held that an ALJ is entitled to rely on the testimony of a vocational expert, Defendant argues that the ALJ properly relied on that testimony here. (Doc. 18 at 5, 6).

The Court concludes that the ALJ properly relied on the testimony of the vocational expert in determining that Nichols could make the adjustment to other work in the national economy. The record includes substantial evidence to support that determination. Of note, the ALJ began by confirming that the vocational expert had heard Nichols's testimony and was familiar with Nichols's past work. (Tr. at 82.) The ALJ then asked the vocational expert to describe Nichols's past work and to assume "a hypothetical individual of the claimant's age, education, work history that you just described," and with Nichols's RFC. (*Id.* at 82-83.)

Establishing Nichols's age, education, work history, and RFC immediately before asking about "transferrable skills," the ALJ made clear to the vocational expert that she was considering the statutory test (*id.* at 82-84), and when the vocational expert answered by listing several transferrable skills, she was listing skills that transferred with "little, if any, vocational adjustment required in terms of tools, work process, work settings, and the industry." 20 C.F.R. Part 404, Subpt. P, Appendix 2, § 201.00(f); 20 C.F.R § 404.1568(d)(4). Later, when the ALJ asked the vocational expert about specific alternative jobs, the vocational expert distinguished those that would require significant additional vocational training—jobs with an SVP of 5—from jobs to

7

which a hypothetical individual with Nichols's past could transfer without meaningful additional training. (Tr. at 87-88.) This confirms that the ALJ and vocational expert both understood that "transferrable" was being used in its specific statutory meaning and because they were on the same page, the ALJ properly relied on the vocational expert's testimony regarding transferable skills. *See Tucker v. Barnhart*, 130 F. App'x 67, 68 (8th Cir. 2005).

The Court therefore concludes that there was substantial evidence in the record to support the ALJ's finding that Nichols's work as a receptionist was "so closely related to" work as an order clerk that she "could be expected to perform [that new job] at a high degree of proficiency with a minimal amount of job orientation," SSR 82-41, based on the vocational expert's testimony that a person of Nichols's age, with Nichols's RFC, and Nichols's past work experience could easily transfer between jobs.

### b. **Nichols argues that the ALJ erred in calculating her RFC when she failed to properly weigh evidence that Nichols needed to elevate her legs frequently.**

Nichols also argues that the ALJ failed to properly evaluate Dr. Brooks's opinion and failed to explain why Nichols's testimony was not consistent with the medical evidence. (Doc. 13 at 3). Specifically, Nichols asserts that the ALJ dismissed Dr. Brooks's opinion that Nichols required frequent elevation of her legs—something Nichols herself confirmed on the stand—and therefore failed to account for that limitation in her RFC. (*Id.*)

Defendant responds that the ALJ properly considered Plaintiff's alleged need to elevate her legs and provided grounds for discounting both Dr. Brooks's opinion and Plaintiff's subjective complaints. (Doc. 18 at 9). Defendant asserts that the ALJ correctly observed that, as a podiatrist, Dr. Brooks was not qualified to offer an opinion on most of the areas of functioning he rated. (*Id.* at 10). Defendant also argues that the ALJ correctly observed that Dr. Brooks's opinions regarding

8

Plaintiff's ability to return to or perform work were vocational opinions which were not entitled to any weight. (*Id.*) Finally, Defendant argues that there was no support in the record of either Dr. Brooks's or Nichols's assertion that elevating her legs was necessary. (*Id.* at 11).

The Court concludes that the ALJ's discounting of Dr. Brooks's opinion and Nichols's testimony was permissible. First, having determined that Dr. Brooks's specialty limited the scope of his expert opinion, the ALJ was permitted to disregard conclusions outside that specialty; a medical source's specialization or lack thereof, is a proper factor for an ALJ to consider when weighing opinion evidence. *See* 20 C.F.R. § 404.1527(c)(5). Moreover, the ALJ was not required to articulate the weight she afforded to each and every limitation Dr. Brooks described, including the alleged need for Nichols to elevate her legs. *See Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014).

The Court further finds that the ALJ sufficiently explained her reasons for discounting Dr. Brooks's opinion and Nichols's testimony. Nichols argues that she had been diagnosed with "numerous impairments related to her lower extremities" (Doc. 13 at 10), but the ALJ noted evidence that Nichols's symptoms were well controlled through routine or conservative treatment and that her failure to follow her physician's medical advice "is one indication, among others, which suggests [s]he is not motivated fully to return to substantial gainful activity," suggesting that her symptoms are "minimal, tolerable, and non-disabling" (Tr. at 22-23). Likewise, the ALJ clearly explained that Dr. Brooks had "provid[ed] an opinion outside his area of expertise as it relates to lifting and carrying" and noted that his opinion that Nichols had to elevate her feet was inconsistent with medical evidence showing that her conditions were well managed without a diagnosed need to elevate her legs. (*Id.* at 23.) Both are reasonable bases for giving that opinion little weight. *See Toland v. Colvin*, 761 F.3d 931, 935-36 (8th Cir. 2014).

Accordingly, the Court concludes that the ALJ's RCF was supported by substantial evidence.

### VI. Conclusion

Having found that there was substantial evidence in the record to support the ALJ's determination that Nichols is not disabled, the Court will affirm.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Nichols's complaint is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 26th day of March, 2020.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE